**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Timothy McKee,

Plaintiff,

v.

Peoria Unified School District; Peoria Unified School District Board; Denton Santarelli, Superintendent for the District; Jane Doe Santarelli; Mary Ellen Simonson; Bruce E. Meyerson; Kirstin Story; John Doe Story; Denise Bainton; John Doe Bainton; Tahlya Visintainer; John Doe Visintainer; et al.,

Defendants.

No. CV-13-00140-PHX-GMS

**ORDER**

Defendants have moved to dismiss and strike, (Doc. 21), Plaintiff Timothy McKee's Second Amended Complaint (SAC), (Doc. 20). The Court grants the Motion to Strike and denies the Motion to Dismiss for the reasons described below.[1]

**BACKGROUND[2]**

McKee worked as a physical education teacher in Defendant Peoria Unified School District for nine years. (Doc. 20 ¶ 16.) On May 5, 2010, one of the students

[1] The Parties' requests for oral argument are denied because they have had an adequate opportunity to discuss the law, and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] The Court takes as true the allegations contained in McKee's Amended Complaint at this stage of the litigation. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996)

drowned during a free swim period that McKee supervised with another physical education teacher. (*Id.* ¶¶ 18–25.) Two teachers and no lifeguards were present. (*Id.*)

The District hired Defendants Mary Ellen Simonson and Kristin Story, attorneys who worked with Defendant Tahlya Visintainer, the District's human resource director, to investigate the accident. (*Id.* ¶¶ 8, 26.) Simonson, Story, and Visintainer met with McKee in August 2010 and requested that he resign; if he did not, the District threatened to terminate his employment. (*Id.* ¶ 27.) Simonson, Story, and Visintainer informed McKee that they were preparing a formal Statement of Charges for Defendant Peoria Unified School District Governing Board and that McKee would need to meet with them again before August 20, 2010. (*Id.* ¶ 29.)

After his meeting with Simonson, Story, and Visintainer, McKee hired an attorney who began an investigation into the District's actions. (*Id.* ¶¶ 31–33.) McKee sought evidence from the District relating to the charges against him, but the District failed to timely produce that information, including records of interviews with witnesses. (*Id.* ¶¶ 102–04.) McKee's attorney submitted a letter to the Board on August 17, 2010, that detailed McKee's account of the events of May 5, 2010, the existence of an intergovernmental agreement (IGA) between the District and the City of Glendale that required that three lifeguards be present when the pool was used (*Id.* ¶¶ 33–35.), and the District's failure to comply with the safety regulations. (*Id.* ¶¶ 37–40.)

McKee alleges that the decision to terminate him was made before August 20, 2010, outside of a required public meeting. (*Id.* ¶¶ 42-43, 45–46.) On that date, the Board met first in an executive session to consider McKee's employment. (*Id.* ¶¶ 48–49, 51–52.) Defendant Denton Santarelli, the District superintendent, presented the Board with the Statement of Charges, in which the administration alleged that there were sufficient grounds to terminate McKee's employment. (*Id.* ¶ 53.) The Board presented Simonson as its attorney during the public session of August 20, 2010. (*Id.* ¶ 60.) The Board adopted the Statement of Charges, after which McKee requested a hearing pursuant to state law. (*Id.* ¶¶ 63–64.) The Board selected a hearing officer, who heard the case, made

findings of fact, and ultimately made a recommendation to the School Board after hearing from Simonson and Story on behalf of the District and McKee and his counsel. (*Id.* ¶¶ 65–67.) The hearing officer's findings were "fully in favor of McKee and he recommended no action be taken against McKee." (*Id.* ¶ 68.)

The Board met again on December 6, 2010, and heard argument on the hearing officer's recommendations. (*Id.* ¶ 70.) The Board's attorney, Simonson, argued on behalf of the District. (*Id.*) A different attorney, Denise Bainton, appeared for the first time on behalf of the Board at the hearing. (*Id.* ¶ 77.) The Board rejected the hearing officer's recommendations and voted to terminate McKee's employment. (*Id.* ¶ 71.)

After voting to terminate McKee's employment, the Board altered the hearing officer's findings to support the ultimate termination decision even though the Board did not have before it the full record of the hearing. (*Id.* ¶¶ 72, 75, 79.) The District also supplied the Board with portions of the record without notice to McKee. (*Id.* ¶¶ 81–82.) During this process, Simonson, Visintainer, and Santarelli encouraged members of the Board to conduct their own investigations outside the formal proceeding. (*Id.* ¶¶ 78, 86–87.) In addition, Visintainer and Santarelli had numerous *ex parte* communications with the Board. (*Id.* ¶ 86.) Simonson represented both the school administration and the Board. (*Id.* ¶¶ 88–98.)

McKee filed an action against Defendants in Maricopa County Superior Court on November 21, 2011, in which he challenged the Board's actions. (Doc. 1-2.) He eventually amended his Complaint on January 2, 2013, to assert claims under 42 U.S.C. § 1983: First Amendment retaliation and denial of due process. (Doc. 1-4 at 89.) Defendants removed to this Court on January 22, 2013. (Doc. 1.) McKee once again amended his Complaint and Defendants have moved to dismiss and/or strike on five grounds: (1) McKee's SAC violated a still-operative state court order; (2) the SAC added a claim in violation of this Court's Order; (3) the *Colorado River* doctrine counsels a dismissal in light of parallel state court proceedings; (4) the § 1983 claims are untimely; and (5) McKee fails to state a claim upon which relief can be granted. Defendants also

seek sanctions under 28 U.S.C. § 1927. The Court strikes McKee's conspiracy claim, but the remainder of the SAC survives Defendants' Motion.

## I. SCOPE OF AMENDMENT

Defendants assert that the claims McKee brings in his SAC contravene an order issued by the Superior Court before this case was removed. "After removal, the federal court takes the case up where the State court left it off." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 436 (1974) (internal quotation marks omitted). "The federal court . . . treats everything that occurred in the state court as if it had taken place in federal court." *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963). "Consequently, an order entered by a state court 'should be treated as though it had been validly rendered in the federal proceeding.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 887 (9th Cir. 2010) (quoting *Butner*, 324 F.2d at 786).

McKee's original Complaint asserted a common law whistleblower claim, a statutory wrongful termination claim, and claims for emotional distress. (Doc. 1-3.) The Superior Court dismissed without prejudice the whistleblower claim on Defendants' Motion to Dismiss. (Doc. 21-6, Ex. 6 at 22:2–17.) The concern was that McKee's administrative appeal from his termination was still pending in Superior Court. (*Id.*) The Superior Court also granted leave to amend "as to the other two counts. . . . . You'll have 30 days from [December 3, 2012] to amend your pleadings as to the other two claims." *Id.* at 22:18–25.) The "two counts" language seems to reference the wrongful termination and emotional distress claims.

Nevertheless, when McKee filed his Amended Complaint, he asserted claims under 42 U.S.C. § 1983 for First Amendment retaliation and due process violations. (Doc. 1-4 at 89.) Those claims arguably fell outside of the scope of amendment permitted by the Superior Court, which allowed only amendment of the wrongful termination and emotional distress claims, not the addition of new claims.

But the Superior Court's order was not the final word on the scope of permissible amendment. On February 19, 2013, after removal, the Parties filed a Stipulation re

Consent to Filing of Amended Complaint. (Doc. 15.) In that Stipulation, Defendants "consent[ed] pursuant to Fed. R. Civ. P. 15(a)(2) to the filing of an amended complaint against them in this matter . . . . This consent extend[ed] only to a complaint that attempts to restate one or both of the claims contained in the currently operative complaint, and not to any proposed amended complaint seeking to add other claims or parties." (*Id.* at 1.) Pursuant to that Stipulation, the Court entered an Order granting McKee "leave to file an amended complaint restating one or both of the claims contained in the currently operative complaint." (Doc. 16.)

There is no dispute that the then-operative complaint was the Amended Complaint that contained the § 1983 claims. In light of the Stipulation and the Court's subsequent Order, the first two claims in the Second Amended Complaint were appropriately asserted. Once the Parties reached a stipulation regarding the scope of permissible amendment and this Court ended an order that incorporated that stipulation any previous orders by the Superior Court regarding the scope of the amendment were "dissolved or modified" and of no effect. 28 U.S.C. § 1450.

Yet the scope of permissible amendment contained in the stipulation was limited to the two § 1983 claims that existed in the Amended Complaint. McKee added a conspiracy claim in his SAC that was not included in the Amended Complaint. This Court specifically ordered that "[i]f Plaintiff wishes to file an amended complaint adding claims or parties not appearing in the current operative complaint, filing of that complaint must separately comply with the requirements of Fed. R. Civ. P. 15(a)([2]) and is not permitted by this Order." (Doc. 16.) McKee did not obtain consent from Defendants or leave from this Court to add a new claim as required by Fed. R. Civ. P. 15(a)(2). Count Three therefore is stricken without prejudice.

McKee argues that, while he did not have a conspiracy claim in his Amended Complaint, he did allege that Defendants acted together to deprive McKee of his rights under § 1983. To strike his conspiracy claim "would be elevating form over substance." (Doc. 23 at 9.) Whatever McKee wishes to call it, he did not have a right under the

Federal Rules to add a new legal claim for conspiracy. While the factual basis for the claim may have been present, the addition of a new legal claim is not a matter of form.

**II. ABSTENTION**

Defendants next claim that this Court should dismiss or stay this litigation under the *Colorado River* doctrine to allow McKee to complete the appeal of his termination that is currently pending in Superior Court. (Doc. 21-1, Ex. 1; Doc. 21-2, Ex. 2.)[3] On appeal, McKee argues, similar to his assertions here, that his termination involved a denial of due process, statutory failures in the Statement of Charges, and arbitrary and capricious action. (Doc. 21-7, Ex. 7.)

**A. Legal Standard**

When a state court and federal court are engaged in "the contemporaneous exercise of concurrent jurisdiction," considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" may result in a federal court staying litigation. *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 817 (1976). Nevertheless, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and the doctrine of *Colorado River* should be invoked only in "exceptional" circumstances. *Id.* at 817–18.

To decide whether a particular case presents the exceptional circumstances that warrant a *Colorado River* stay, "the district court must carefully consider 'both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise.'" *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 818). The decision rests not on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. *Moses H. Cone Mem'l*

---

[3] The Court takes judicial notice of the pendency of McKee's administrative appeal because it is a matter of public record. **Error! Main Document Only.***Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104 (1991).

*Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983); *see also Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988) (noting that factors are to be applied in a "pragmatic and flexible" way). That already tilted balance in favor of exercising jurisdiction is further exacerbated when a federal question is involved. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 23, 26 ("[T]he presence of federal-law issues must always be a major consideration weighing against surrender [of jurisdiction].").

The Ninth Circuit has identified eight factors for assessing the appropriateness of a *Colorado River* stay:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co.*, 656 F.3d at 978–79 (internal citation omitted). If there is any doubt as to whether a factor weighs in favor of either party, that factor should be resolved against a stay. *Id.* at 979. Defendants advance arguments only under the third, fourth, fifth, sixth, and eighth factors.

**B. Piecemeal Litigation**

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters*, 843 F.2d at 1258. The general rule regarding parallel suits is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817 (internal citation omitted). "The mere possibility of piecemeal litigation does not constitute an exceptional circumstance." *R.R. St. & Co.*, 656 F.3d at 979 (citing *Travelers*, 914 F.2d at 1369). Instead, the case must raise a "special concern about piecemeal litigation," *Travelers*, 914 F.2d at 1369, which can be remedied by staying the federal proceeding,

*R.R. St.*, 656 F.3d at 979.

A special concern arises when the state court has made rulings or the state action has progressed in a manner that unreasonable duplicative effort would result from the federal court's exercise of jurisdiction. *See Travelers*, 914 F.2d at 1369 (finding this factor to be neutral because "at the time of the district court's stay order the state court had made no rulings whatsoever in regard to this dispute" and "whichever court were to first reach a judgment on the merits, that judgment would most likely have conclusive effect on the other court"); *cf. Am. Int'l Underwriters*, 843 F.2d at 1258 (finding that the state court having already decided several substantive issues in the case, it was clear that the federal court would have to decide those issues anew if it exercised jurisdiction).

This case does not present any special concerns beyond the possibility that the state and federal courts might arrive at different conclusions. In fact, it is not clear that this is a parallel suit. The typical *Colorado River* case arises when two different lawsuits have been filed, one in state court and the other in federal court that allege the same basic facts and seek the same basic relief. That is not the posture here. McKee's only pending lawsuit in state court is a direct appeal from the Board's decision to terminate his employment. While this administrative appeal likely presents some similar issues, such as violations of McKee's due process rights, it is not this lawsuit's twin. Its procedural posture is quite different, and it is not clear that McKee's administrative appeal would necessarily result in relief. Furthermore, McKee's appeal does not include a whistleblower/retaliation claim. Defendants have not shown that entertaining this suit raises some special concern about piecemeal litigation that a stay would remedy.

**C. Order of Jurisdiction**

This factor "must be applied in a pragmatic, flexible manner so that priority is not measured exclusively in terms of which complaint was filed first, but rather in terms of how much progress was actually made in the state and federal actions." *Am. Int'l Underwriters*, 843 F.2d at 1258 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21). Further, "the mere existence of a case on the state docket in no way causes a substantial

waste of judicial resources nor imposes a burden on the defendant[ ] which would justify abstention." *Travelers,* 914 F.2d at 1370 (internal quotation marks and citation omitted).

It appears that McKee's administrative appeal has been pending since sometime in 2011. (Doc. 21-2, Ex. 2.)[4] The briefing schedule recently completed, but it is not clear from the Superior Court's docket when argument will be held or a decision rendered. It is true that the state court case is further along than this case, where a responsive pleading has not yet been filed. Nevertheless, the state law administrative appeal is not a parallel suit. The relatively modest overlap in issues between the two suits is outweighed by their very different character. Consequently, the order of jurisdiction matters sheds little light on the advisability of a stay.

**D. Applicable Law**

The presence of federal-law issues will always be a major consideration weighing against surrender of jurisdiction. *R.R. St.*, 656 F.3d at 980. Still, "in some rare circumstances", the presence of state-law issues may weigh in favor of that surrender. *Id.* When a case involves "routine issues of state law" this factor is considered neutral. *See Travelers*, 914 F.2d at 1370 (claims of misrepresentation, breach of fiduciary duty, and breach of contract); *R.R. St.,* 656 F.3d at 980-81 (claims of breach of contract, indemnification, and subrogation).

The presence of federal claims in this action weighs heavily in favor of retaining jurisdiction. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 23, 26. ("[T]he presence of federal-law issues must always be a major consideration weighing against surrender [of jurisdiction].") And there are no state law claims, even claims that federal courts sitting in diversity routinely address. Analysis of Arizona's statutory scheme for teacher employment decisions will be necessary to resolve McKee's claims. Nevertheless, those issues are secondary to the overall claim, which is federal in character. This factor weighs heavily in favor of the exercise of jurisdiction.

---

[4] The Court takes judicial notice of the state court docket as a matter of public record.

**E. Adequacy of State Court Proceedings**

"A district court may not stay . . . the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants." *R.R. St. & Co.*, 656 F.3d at 981. For example, a stay is not proper if there is a possibility that the parties will not be able to raise their claims in the state action. *See Cone*, 460 U.S. at 26 (emphasizing that the state court might lack the power to grant a motion to compel arbitration sought by plaintiff in federal court); *Holder v. Holder*, 305 F.3d 854, 869 n.5 (9th Cir. 2002) (noting that the state court probably lacked jurisdiction to hear the plaintiff's federal ICARA claim). Because McKee cannot raise his federal claims in his administrative appeal or necessarily receive the relief he desires, this factor weighs against a stay.

**F. Parallel Suits**

This final factor considers whether the state court proceeding "sufficiently parallels" and will resolve all issues in the federal proceeding. *R.R. St.*, 656 F.3d at 982. "Exact parallelism" between the suits is not required for a stay to be appropriate. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Still, "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes a *Colorado River* stay." *R.R. St.*, 656 F.3d at 982 (quotation marks and citations omitted). The Court must assess the weight of this factor based on the state of affairs "at the time of the *Colorado River* analysis." *Id.*

As discussed above, there is some overlap in the issues that the state court will consider in McKee's administrative appeal and this federal action. Both actions will address whether the termination proceedings complied with some form of due process. Nevertheless, McKee also brings a First Amendment whistleblower claim that is not a part of his state court action. Resolution of his appeal will not resolve the First Amendment claim and may not reach all of the due process violations he alleges here. Doubt therefore exists as to the ability of the administrative appeal to address all of the claims that McKee seeks to bring in this action and to provide the relief he seeks.

Defendants have not shown that the *Colorado River* doctrine favors dismissal or a

stay. Many of the factors on which they rely actually favor maintaining jurisdiction. While there will be overlap between McKee's administrative appeal and this federal action, the extent of that overlap is insufficient to overcome the heavy presumption in favor of exercising jurisdiction over a federal case.

**III. STATUTE OF LIMITATIONS**

Defendants also move to dismiss the SAC for failure to comply with the statute of limitations. "Dismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (quoting *Vaughan v. Grijalva*, 927 F.2d 476, 478 (9th Cir. 1991)).

Because § 1983 does not contain its own statute of limitations, courts borrow the forum state's statute of limitations for personal injury claims. *See Wilson v. Garcia*, 471 U.S. 261, 279–80 (1985). In Arizona, that time period is two years. Ariz .Rev .Stat. § 12-542; *see TwoRivers*, 174 F.3d at 991. In an employment-related § 1983 action, the two years begin to run from the time the plaintiff "learns of the 'actual injury,' i.e., an adverse employment action, and not when the plaintiff suspects a 'legal wrong,' i.e., that the employer acted with a discriminatory intent." *Coppinger-Martin v. Solis*, 627 F.3d 745, 749 (9th Cir. 2010); *see also Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) ("[T]he proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.").

According to the Complaint, the School Board voted to terminate McKee's employment on December 6, 2010. (Doc. 20 ¶¶ 70–71.) That was the date McKee would have learned of the actual injury, and so the statute of limitations ran on December 6, 2012. This action was filed on November 21, 2011, (Doc. 1-2), which would qualify as timely; however, the federal claims that are the only current claims in this suit were not raised until the Amended Complaint was filed on January 2, 2013, outside the limitations period, (*id.*).

The issue becomes whether the federal claims that first appeared in the Amended Complaint relate back to the date of the original pleading. "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). If the amended claims share "a common core of operative facts" with the originally-filed claims, relation back is proper. *Mayle v. Felix*, 545 U.S. 644, 659 (2005). The addition of new causes of action does not operate as a bar to relation back because Rule 15(c)(1)(B) directs the court to look at the facts—is the similarly between the two pleadings "sufficient to impart fair notice of the transaction, occurrence, or conduct called into question"? *Martell v. Trilogy Ltd.*, 872 F.2d 322, 324 (9th Cir. 1989). In the words of another district court,

> when it comes to relating an amendment back to the original complaint under Rule 15(c), the test is not whether the amendment states a new cause of action. . . . Instead, the question is whether the defendant ought to have known from the original complaint the facts which the plaintiff is now adding. . . . Once a complaint has been served, the policy behind the statute of limitations has been satisfied so long as the different theories introduced by the amendment fuse together within the 'conduct, transaction, or occurrence' set forth in the complaint.

*Zagurski v. Am. Tobacco Co.*, 44 F.R.D. 440, 442 (D. Conn. 1967); *see also Martell*, 872 F.2d at 324 (asking whether defendant was on notice of the facts giving rise to the claims). If the new claims or causes of action are asserted against the same defendant, the standard is "more leniently applied." *U.S. ex rel. Cericola v. Fed. Nat. Mortgage Assoc.*, 529 F. Supp. 2d 1139, 1148 (C.D. Cal. 2007) (citing *Martell*, 872 F.2d at 324).

A fairly recent case in this circuit presented a similar situation. In *Martin v. School District No. 394*, a teacher brought a Breach of Contract/Wrongful Discharge action in state court. 393 F. Supp. 2d 1028, 1033 (D. Idaho 2005). He amended his complaint to add a § 1983 claim for violations of the Fourteenth Amendment's right to due process. *Id.* The court allowed the amended claims to relate back because the two pleadings were "based on the same core of operative facts, namely, the circumstances leading up to and

including the termination of his employment." *Id.* at 1035. The court observed that "Plaintiff's § 1983 claim does not introduce new facts of which Defendants were unaware. To the contrary, the § 1983 cause of action relies exclusively on the same conduct and occurrences supporting Plaintiff's state law claims enunciated in the original Complaint." *Id.*

The same principles apply here. While the causes of action have changed, the core factual basis for McKee's claims has not. In both complaints he has described the events leading up to the statement of charges, the procedures that the board employed to consider his termination, and subsequent events. Notably, both pleadings describe McKee's letter that allegedly performed a whistleblowing function by alerting the Board to its noncompliance with the IGA, and the connection between the letter and his termination. Therefore, the crux of his present First Amendment and due process claims was apparent in the original pleading. Defendants were on notice that McKee was challenging their actions during that time period and those proceedings. The SAC was "based on the same core of operative facts" as the original Complaint, "namely, the circumstances leading up to and including the termination of [McKee's] employment." *Id.* McKee's amended claims therefore relate back to the filing of the original Complaint and are not barred by the statute of limitations.

## IV. FAILURE TO STATE A CLAIM

### A. Legal Standard

Rule 12(b)(6) is designed to "test the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*,

534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

**B. First Amendment Retaliation Claim: Whistleblower**

McKee alleges that Defendants took adverse employment action against him in part for his submission of a letter on August 16, 2010. (Doc. 20 ¶¶ 115–23.) In that letter, he "reported to the Board that its policies and protocols for supervising the Ironwood High School pool were not in compliance with the County Regulations or the IGA." (*Id.* ¶ 115.)

"The First Amendment shields a public employee if he speaks as a citizen on a matter of public concern." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (internal quotation marks omitted). A claim that a government entity impermissibly retaliated against a plaintiff for the exercise of his First Amendment rights requires the plaintiff to show that (1) he spoke on a matter of public concern, (2) he spoke as a private citizen (not as a public employee), and (3) his speech was a substantial or motivating factor in the adverse employment action. *Robinson v. York*, 566 F.3d 817, 822 (9th Cir.

2009). Defendants contend that the allegations of the SAC—even taken to be true—fail to show that McKee was speaking on a matter of public concern when he wrote the August 12, 2010 letter.

"The public concern inquiry is purely a question of law." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). It looks at "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). Notably, the fact that a communication was not public is not dispositive of the question of public concern. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 749 (9th Cir. 2010) ("It is not determinative that Anthoine did not air his concerns publicly."). The absence of a developed factual record at this stage of the litigation makes a proper weighing of the statement very preliminary.

"Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick*, 461 U.S. at 146). Such speech stands in contrast to "individual personnel disputes and grievances" that "would be of no relevance to the public's evaluation of the performance of governmental agencies". *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983). Thus, "the content of the communication must be of broader societal concern. [Our] focus must be upon whether the public or community is likely to be truly interested in the particular expression, or whether it is more properly viewed as essentially a private grievance." *Roe v. City and Cnty. of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997). The speech in question need not be wholly devoted to issues of public concern to obtain First Amendment protection. *See Connick*, 461 U.S. at 149 (one of a multi-part questionnaire touched on matters of public concern and therefore the speech received protection). Nevertheless, "'passing references to public safety[,] incidental to the message conveyed' weigh[] against a finding of public concern." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 712 (9th Cir. 2009) (quoting *Robinson v. York*, 566 F.3d 817, 823 (9th Cir. 2009)). Where specific allegations of conduct amounting to an "actual or potential

wrongdoing or breach of public trust" are absent, the speech's reference to public officials or entities is unlikely to merit protection. *Id.*

The content of the letter addressed matters of public concern. The letter opens by stating two purposes: (1) a "Notice of Claim pursuant to A.R.S. 12-821-01 for tortious claims including but not limited to defamation and infliction of emotional distress caused by the District and its agents", and (2) "notice under the Arizona whistleblower statute, Ariz. Rev. Stat. ("A.R.S.") § 38-531, *et seq.* of the District's failure to abide its Intergovernmental Agreement with the City of Glendale and violations of the County Regulations regarding Swimming Pools." (Doc. 21-9, Ex. 9 at 1.) The letter then describes, in some detail, the drowning accident and McKee's role in observing and responding to the situation. (*Id.* at 1–2.) McKee denied responsibility for the accident and claimed that the District caused emotional distress by "insinuat[ing] and intimat[ing] that Mr. McKee is responsible for the student's death." (*Id.* at 2.) The letter recites case law that McKee claims shows his lack of responsibility under Arizona law. (*Id.*) While this first portion of the letter appears to address a dispute solely between McKee and the District, the subject of that dispute may be regarded as a matter of public concern. The dispute centered on a public school teacher's involvement (or lack thereof) in a student's accidental drowning during school hours and on a school facility. The local community would likely be interested in that subject and the accounts of both sides. The event provides a window through which parents and relatives of public school children could scrutinize those to whom they entrust their loved ones. Therefore, the content of the first part of the letter addresses a matter of public concern.

The second portion of the letter turns to a criticism of the District's actions in the accident. McKee described how the District "neglected and failed to have properly qualified lifeguards on duty", and "has no policies in place for water safety." (*Id.*) He then described the existence of the IGA, its water safety requirements, and the District's failure to comply those terms. (*Id.* at 3.) The District's failure to engage in safety practices and abide by contractual agreements is a matter of public concern for the same

reasons as McKee's involvement in the accident. The public would be interested in these subjects, especially in light of the accidental drowning. Consequently, the content of the speech in question addresses a matter of public concern.

To the extent Defendants base their motion to dismiss on the form and context in which the allegedly protected speech was made, it invites this Court to consider and resolve factual matters on a motion to dismiss. The SAC sufficiently alleges a matter of public speech. McKee alleges in his SAC that the letter served to formally put the District on notice of its failure to abide by proper safety regulations. (*Id.* at 1 ("This letter also constitutes notice under the Arizona whistleblower statute . . . of the District's failure to abide its Intergovernmental Agreement with the City of Glendale and violations of the County Regulations regarding Swimming Pools."); Doc. 20 ¶¶ 33–38, 115–17.) In light of these declared purposes, which the Court takes as true at this stage, it appears McKee spoke, at least in part, with a desire "to bring to light actual or potential wrongdoing or breach of public trust" by the District. *Connick*, 461 U.S. at 148.

In sum, the Second Amended Complaint sufficiently alleges that McKee was retaliated against for a matter of public speech.

**C. First Amendment Retaliation Claim: Retention of Counsel**

McKee also claims that Defendants' adverse employment action was in retaliation for exercising his First Amendment right to consult with counsel prior to meeting with District officials. (Doc. 20 ¶¶ 113–14, 118–22.) Defendants claim there is no First Amendment right to consult with counsel, citing the Supreme Court's decision in *Walters v. National Ass'n of Radiation Survivors*. In *Walters*, the Supreme Court addressed whether the Veterans Administration violated the First Amendment by capping the fees attorneys could charge for their services in relation to obtaining benefits. 473 U.S. 305, 307 (1985). In that context, the Court observed, in dicta, that the idea that claimants "have a First Amendment right to pay their surrogate speaker" when they are "presently . . . allowed to speak in court" was a "questionable proposition." *Id.* at 335. In a footnote, the Court then noted that its decision was largely confined to the statutory structure

Congress crafted to administer veterans' benefits. *Id.* at 335 n.13 (noting that the constitutional analysis for "a restriction on the available resources of a claimant in Government benefit proceedings" differed from other contexts). Accordingly, *Walters* did not hold that there is no First Amendment right to consult with an attorney—the Court indicated its hesitation to make such a holding in a benefits proceeding, but did not close any doors.

The Ninth Circuit has squarely addressed the question: "[W]e recognize that—at least as a general matter—the right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition." *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 611 (9th Cir. 2005) (internal quotation marks omitted). Consequently, Defendants' argument that the First Amendment does not protect an individual's right to retain and consult with counsel is incorrect.[5] McKee's First Amendment Retaliation claim based on his consultation with counsel remains.

**D. Due Process**

In his SAC, McKee chronicles at least eight actions that he claims violated his right to due process under the Fourteenth Amendment: (1) presenting evidence not included in the Statement of Charges; (2) refusing to disclose names of witnesses; (3) blocking access to evidence; (4) interfering with McKee's access to witnesses; (5) having Simonson, who advised the Board about adopting the Statement of Charges prior to the hearing, appear before the Board during the hearing; (6) retaliation against McKee for obtaining counsel; (7) having the District or its agent act as investigator, party, judge, prosecutor, and reviewing tribunal; and (8) providing a tribunal with a direct pecuniary interest in the outcome of the hearing. (Doc. 20 ¶ 107.) Similar allegations pepper the

---

[5] Defendants claim that the Ninth Circuit misinterpreted the cases it cited for the proposition that the First Amendment protects the right to hire and consult an attorney, and that this Court should therefore disregard the Ninth Circuit's clear recognition of such protection. This Court does not sit in judgment of the Ninth Circuit, and it would violate its duty to disregard controlling authority in this jurisdiction.

remainder of his pleading.

Defendants claim only that either the allegation that the Board's attorney met with members of the District Administration before adopting a Statement of Charges (thus acting both as investigator and adjudicator), or the allegation the Board's counsel acted collusively with the Administration's counsel fails to state a claim for a violation of due process. As the Supreme Court has remarked, "[t]he contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a . . . difficult burden of persuasion to carry." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). In *Winthrow*, the Supreme Court rejected the "bald proposition" that the "combination of investigative and adjudicative functions . . . , without more, constitute[s] a due process violation." *Id.* at 52, 54, 58. It rejected the lower court's ruling that the mere fact that an agency process combined some investigative and adjudicative functions created a due process violation. *Id.* Nevertheless, it made the following observation: "That the combination of investigative and adjudicative functions does not, without more, constitute a due process violation, does not, of course, preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high." *Id.* at 58. Thus "bare suggestion[s] that the two roles [of investigator and adjudicator] conflicted carrie[s] no weight," *Eklund v. City of Seattle Municipal Court*, 628 F.3d 473 485 (9th Cir. 2010), while "special facts and circumstances" may render viable an allegation of conflated roles, *Winthrow*, 421 U.S. at 58.

McKee does not base his due process claim solely on the contention that the Board acted as both investigator and adjudicator. Had he done so, *Winthrow* would require dismissal. Instead, McKee alleges that all of the eight allegations of bias and impropriety operating together, including the conflation of investigative and adjudicative functions resulted in a process that robbed him of his rights under the Fourteenth Amendment. His case is therefore unlike *Winthrow* and *Eklund*, where the sole due process allegation was role overlap. Defendants have not contested in this Motion to Dismiss the viability of any

of the other due process violations (outside of the collusion of counsel, discussed below). Given that the interplay between all the due process violations implicates factual questions, the Court declines to rule that McKee's claim of bias due to the Board's overlapping roles fails to state claim on which relief is granted.

Defendants also challenge McKee's allegation that there was substantial collusion between the attorneys for the Board and Administration at a point when each entity should have had separate counsel. Their challenge, however, is based solely on discussions in transcripts and records from the termination proceedings. McKee claims that representations made in those proceedings suggest that there was overt collusion; Defendants claim that the record reflects no such thing. Consequently, there is a factual dispute between the Parties that is inappropriate for consideration on a Motion to Dismiss, especially on matters outside the pleadings.

**CONCLUSION**

McKee did not comply with the Court's Order when he added a new claim for conspiracy in his SAC. The Court grants Defendants' Motion to Strike that claim. Outside of that claim, however, none of Defendants' grounds supports dismissal of McKee's remaining claims. Consequently, their request for attorneys' fees and costs under 28 U.S.C. § 1927 is denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (Doc. 21), the Second Amended Complaint is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike, (Doc. 21), Count III in the Second Amended Complaint is **GRANTED.**

Dated this 2nd day of August, 2013.

G. Murray Snow
United States District Judge